# JONES LAW FIRM

P.O. Box 44188 Madison, WI 53744-4188

Attorney William Richard Jones    (ph) 608·628·0598    (fax) 608·514·9003    bill@billjoneslawfirm.com

February 16, 2014

**Via Electronic Filing**
Hon. Rudolph T. Randa
U.S. Courthouse for the Eastern District of Wisconsin
517 E. Wisconsin Ave.
Milwaukee, WI 53202-4500

                **RE:    US v. Bankston**
                        **Case No. 12-CR-189**
                        **Sentencing Memorandum**

Dear Judge Randa:

      I am writing in anticipation of William Bankston's sentencing hearing scheduled for February 21, 2014 at 11:00 a.m. I intend to recommend that he be sentenced to time served followed by three years of supervised release.

      **Mr. Bankston's 3553 sentencing factors**

      It is important to recognize, at the onset, that Mr. Bankston was not a part of the rather sophisticated and wide sweeping offense conduct that makes up the foundation of the proceedings in this matter. The Jones Drug Trade Organization, which has come to be known as the DTO in this matter, was a drug conspiracy that had nothing to do with Mr. Bankston. Mr. Bankston was pulled into these proceedings as a result of the wiretapping of Getharia "Gek" Smith, not because he was seen, or has been accused of, affiliating with any of the DTO participants.

      On May 23, 2012 Tiffany Martinez was caught transporting cocaine from Texas to Wisconsin for Steve Jones. I am sure the seizure of 3 kilos of cocaine caused a significant setback in Steve Jones's drug trade. Four days later, May 27, 2012, a phone call was made by Gek Smith to a man later identified as William Bankston. The conversation related to how much difficulty Smith was having getting cocaine. I presume this relates to the loss of cocaine that Steve Jones experienced as a result of the Martinez arrest and seizure 4 days earlier. The discovery is also replete with references by Steve Jones to others that the availability, in general, of cocaine was very scarce. Smith and Bankston spoke on the phone over the next two months about obtaining drugs or complaining to one another that there was little supply of cocaine. During this two month period Smith is also heard and seen attempting to find other sources of cocaine not related to William Bankston. There is a discussion between Smith and Bankston on July 2, 2012 during which Smith indicates a desire to have Bankston be a middleman for

cocaine. Smith wanted four ounces. There does not appear to be any drug discussions between Smith and Bankston after July 10.

The discovery also documents a call, made July 4, 2012, by Steve Jones to Chase Cole. During the call Steve Jones expresses his anger over the fact that Oliver Jones and Smith were basically on their own getting drugs from other sources (and not including Steve Jones in the supply). This is further evidence that the sources Smith was contacting (Bankston for one) were being expressing kept separate from the Jones DTO.

Mr. Bankston is discussed very rarely in the discovery. His discussions with Mr. Smith involve "talking shop" for a short period when Mr. Smith could not get his cocaine from Steve Jones. There is no connection, whatsoever, with Bankston and Steve Jones or the J-Spot where the DTO operated.

Mr. Smith did a proffer (discovery p. 3008) and the report says "SMITH stated that during the summer to the fall of 2012, he was not receiving cocaine from JONES anymore. SMITH had to obtain it from other sources. SMITH stated that he occasionally received cocaine from BOO (William BANKSTON) in quantities ranging from 1 - 3 ounces." This corroborates the phone surveillance as "occasionally" could mean 4 times (1 more than even the phone surveillance documents) and 1-3 ounces per time (use average 2 ounces per time) would mean about 240 grams. The government and Mr. Bankston have agreed to factor in relevant conduct that may not have been picked up on telephone surveillance and therefore have, what I would describe as, an aggressive but reasonable assessment of drug activity involving 300 – 400 grams of powder cocaine.

Mr. Bankston's affiliation with Gek Smith is well documented as a result of telephone surveillance and was a relatively brief, two month period when Mr. Smith appeared particularly desperate for a drug supplier. It was during that time that Mr. Bankston served primarily as a middleman for Gek Smith in order to receive the relatively small "finder's fee" that middlemen typically receive for such work. Bankston was arrested while living in squalor. He was at a rented residence which had no electricity. Nothing of value was found at his home. This is in stark contrast to the extravagant lifestyles that Smith, Jones, and others who were part of the Jones DTO were experiencing.

I raise this point in advance of the sentencing hearing because it relates to the assessment of 3553 sentencing goals and the need to find a sentence that is not more than necessary to reach those goals. The PSR points out that Mr. Bankston has demonstrated respect for his supervisor as well as the rules of supervision since the start of pretrial release on September 26, 2012. Further incarceration, beyond the time he has already served, would be more than appears necessary to meet any rehabilitation needs. The severity of Mr. Bankston's offense is low. He involved himself with Mr. Smith for a relatively short period of time and for little profit. In addition, none of Mr. Bankston's prior convictions (or the offense of conviction in this case) involve possession of a weapon or violence directed towards others. Mr. Bankston is a non-violent offender who is at an age (39) at which the chance of criminal recidivism is general recognized to begin to diminish.

     The guideline recommendation in this case should be considered more than is necessary not only in relation to Mr. Bankston's difficult socioeconomic background but also more generally given that the United States Government Accountability Office has actually found that our country's growing inmate crowding is, in fact, *negatively* affecting inmates, staff, and the BOP's infrastructure. (http://www.gao.gov/products/GAO-12-743).

                             Sincerely,
                               JONES LAW FIRM
                               /s/
                               William R. Jones

cc:  AUSA Erica O'Neil / Margaret Honrath (via electronic filing)
     Clerk of Court, Western District of Wisconsin (via electronic filing)